**IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF OKLAHOMA**

BRADLEY W. MCCAMMON,           )
                               )
          Plaintiff,           )
                               )
v.                             )   Case No. CIV-19-038-KEW
                               )
COMMISSIONER OF SOCIAL         )
SECURITY ADMINISTRATION,       )
                               )
          Defendant.           )

**OPINION AND ORDER**

Plaintiff Bradley W. McCammon (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Claimant's application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled. For the reasons discussed below, it is the finding of this Court that the Commissioner's decision should be and is AFFIRMED.

**Social Security Law and Standard of Review**

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social

Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. §423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See*, 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally,* Williams v. Bowen, 844 F.2d 748, 750-51 (10th Cir. 1988).

2

limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. Hawkins v. Chater, 113 F.3d 1162, 1164 (10th Cir. 1997)(citation omitted). The term "substantial evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. Casias v. Secretary of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951); *see also*, Casias, 933 F.2d at 800-01.

### Claimant's Background

Claimant was 41 years old at the time of the ALJ's decision. Claimant completed his education through the eighth grade and was

in independent study one day a week for his ninth and tenth grade years.  Claimant has worked in the past as a line loader for a powder coating company and a cleaner/operator at a sawmill.  Claimant alleges an inability to work beginning September 1, 2016 due to limitations resulting from lower back pain with leg pain.

**Procedural History**

On October 13, 2016, Claimant protectively filed for disability insurance benefits under Title II (42 U.S.C. § 401, *et seq.*) and on October 25, 2016, Claimant filed for supplemental security income pursuant to Title XVI (42 U.S.C. § 1381, *et seq.*) of the Social Security Act.  Claimant's applications were denied initially and upon reconsideration.  On May 8, 2018, Administrative Law Judge ("ALJ") Christopher Hunt conducted an administrative hearing by video with Claimant appearing in Poteau, Oklahoma and the ALJ presiding from Tulsa, Oklahoma.  On May 21, 2018, the ALJ issued an unfavorable decision.  On December 31, 2018, the Appeals Council denied review.  As a result, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal.  20 C.F.R. §§ 404.981, 416.1481.

**Decision of the Administrative Law Judge**

The ALJ made his decision at step five of the sequential evaluation. He determined that while Claimant suffered from severe impairments, he retained the residual functional capacity ("RFC") to perform light work with limitations.

**Error Alleged for Review**

Claimant asserts the ALJ committed error in (1) reaching an improper RFC; and (2) making improper findings at step five.

**RFC Determination**

In his decision, the ALJ determined Claimant suffered from the severe impairments of degenerative disc disease of the lumbar spine with left lumbar radiculopathy, obesity, and hepatitis C. (Tr. 14). The ALJ concluded Claimant could perform light work except that he was able to lift and push/pull up to 20 pounds occasionally and ten pounds frequently; sit for six hours in an eighty hour workday; stand for six hours out of an eight hour workday; was unable to climb ladders, ropes, or scaffolds; and only occasionally climb stairs, balance, bend, stoop, kneel, crouch, and crawl. (Tr. 15).

After consultation with a vocational expert, the ALJ found Claimant could perform the representative jobs of fast food worker, hand packager, and flagger, all of which were found to exist in

5

sufficient numbers in the national economy. (Tr. 20). As a result, the ALJ found Claimant was not under a disability from September 1, 2016 through the date of the decision. Id.

Claimant contends the ALJ improperly failed to find his mental impairments to be severe at step two and include the limitations associated with the condition in the RFC. The ALJ determined that while Claimant alleged and reported that he suffered from depression and anxiety, "the records are devoid of any diagnosis or treatment for such. Therefore, the [ALJ] determined that these were non-medically determinable impairments." (Tr. 15).

The references to a mental impairment in the record are curious. At each turn, the only reference to a diagnosis of depression is a report by Claimant to the particular physician attending him and not a diagnosis by any of these physicians of record. (Tr. 334, 337-38). References are made in the record to a prescription for Celexa, but no accompanying diagnosis for depression is apparent. (Tr. 309, 335). Claimant also contends the ALJ should have ordered a consultative mental examination to ascertain the extent of his impairment.

Generally, the burden to prove disability in a social security case is on the claimant, and to meet this burden, the claimant

6

must furnish medical and other evidence of the existence of the disability. Branam v. Barnhart, 385 F.3d 1268, 1271 (10th Cir. 2004) citing Bowen v. Yuckert, 482 U.S. 137, 146 (1987). A social security disability hearing is nonadversarial, however, and the ALJ bears responsibility for ensuring that "an adequate record is developed during the disability hearing consistent with the issues raised." Id. quoting Henrie v. United States Dep't of Health & Human Services, 13 F.3d 359, 360-61 (10th Cir. 1993). As a result, "[a]n ALJ has the duty to develop the record by obtaining pertinent, available medical records which come to his attention during the course of the hearing." Id. quoting Carter v. Chater, 73 F.3d 1019, 1022 (10th Cir. 1996). This duty exists even when a claimant is represented by counsel. Baca v. Dept. of Health & Human Services, 5 F.3d 476, 480 (10th Cir. 1993). The court, however, is not required to act as a claimant's advocate. Henrie, 13 F.3d at 361.

The duty to develop the record extends to ordering consultative examinations and testing where required. Consultative examinations are used to "secure needed medical evidence the file does not contain such as clinical findings, laboratory tests, a diagnosis or prognosis necessary for decision."

7

20 C.F.R. § 416.919a(2). Normally, a consultative examination is required if

(1) The additional evidence needed is not contained in the records of your medical sources;

(2) The evidence that may have been available from your treating or other medical sources cannot be obtained for reasons beyond your control, . . .

(3) Highly technical or specialized medical evidence that we need is not available from your treating or other medical sources;

(4) A conflict, inconsistency, ambiguity or insufficiency in the evidence must be resolved, and we are unable to do so by recontacting your medical source; or

(5) There is an indication of a change in your condition that is likely to affect your ability to work.

20 C.F.R. § 416.909a(2)(b).

None of these bases for ordering a consultative examination exists in the record. The ALJ did not violate his duty to develop the record by not ordering further mental evaluations. Moreover, the medical evidence of Claimant's diagnosis by a medical professional of a mental condition which would constitute a severe impairment is illusory and has not been established.

Claimant next contends the ALJ overstated his physical capabilities in the RFC. Specifically, Claimant asserts that his back pain and associated radiculopathy prevents him from standing or sit for six hours in a workday. On September 14, 2016, Claimant

8

saw Dr. Jamie W. Maner at the Sparks Health System complaining of lumbar back pain. Dr. Maner characterized the pain as moderate and the functional limitation as "negative." (Tr. 281). Dr. Maner found Claimant's back to have normal range of motion, normal alignment with lumber tenderness. Claimant's extremities had normal range of motion, normal tone, and no swelling. Sensation and motor strength were within normal limits. (Tr. 282).

On September 22, 2016, Dr. Arthur Pearson found Claimant to be negative for back pain, neck pain or joint pain or swelling. His back was found to have full range of motion, no tenderness, palpable spasm or pain on motion. The examination findings also found limited range of motion, pain with motion noted during exam, positive straight leg raising on the left, normal reflexes and strength bilaterally in the lower extremities. (Tr. 289). X-rays on October 5, 2016 showed early marginal osteophyte formation at some levels, slight disc space narrowing at L4-5, but no fracture or constructive lesion was evident. (Tr. 290).

On May 24, 2017, Dr. Joseph Queeney evaluated an MRI done of Claimant's lumbar spine. He noted minimal disc bulges and a very tiny extruded caudally migrated subligamentous fragment on the left side that probably was irritating the left L5 nerve root.

9

(Tr. 336). Dr. Queeney also noted that Claimant had not tried physical therapy, epidurals, a TENS unit, or a brace. (Tr. 333). Dr. Queeney concluded that epidural injections were recommended as the least invasive means to attempt to shrink the nerve and allow it to heal. Surgery was not recommended at the time. (Tr. 337).

Dr. Janet Rodgers provided a physical RFC assessment wherein she found Claimant could stand/walk and sit for six hours in an eight hour workday. (Tr. 48). Dr. David Coffman reached a similar assessment. (Tr. 71).

"[R]esidual functional capacity consists of those activities that a claimant can still perform on a regular and continuing basis despite his or her physical limitations." White v. Barnhart, 287 F.3d 903, 906 n. 2 (10th Cir. 2001). A residual functional capacity assessment "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts ... and nonmedical evidence." Soc. Sec. R. 96-8p. The ALJ must also discuss the individual's ability to perform sustained work activities in an ordinary work setting on a "regular and continuing basis" and describe the maximum amount of work related activity the individual can perform based on evidence contained in the case record. Id. The ALJ must "explain

10

how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved." Id. However, there is "no requirement in the regulations for a direct correspondence between an RFC finding and a specific medical opinion on the functional capacity in question." Chapo v. Astrue, 682 F.3d 1285, 1288 (10th Cir. 2012). The ALJ's RFC assessment was supported by substantial evidence. Nothing in the record would support a finding of additional limitation due to Claimant's back problems. This Court finds no error in the ALJ's RFC determination based upon this condition.

Claimant also contends he could not maintain a full time work schedule because of the limitations caused by his hepatitis C condition. Claimant cites to a record from Dr. Fernando Calero Baquerizo which stated that Claimant was to begin treatment for hepatitis C and that he was experiencing nausea. The majority of the report is an admonition to Claimant to refrain from IV drug use and ETOH in order to assess his liver function. (Tr. 305). The record does not support a finding of further limitation as a result of this condition.

Claimant also asserts that the ALJ failed to properly consider his subjective statements. The ALJ quoted Claimant's functional

reports and testimony at length. (Tr. 16-17). He concluded, however, that his statements were inconsistent with the medical evidence including x-rays showing only mild degenerative disc disease in the lumbar spine, having a low obesity body mass index, and being prescribed hepatitis C medication with no reported fatigue. (Tr. 17). The ALJ thoroughly discussed the various inconsistencies in the medical evidence and the lack of support for his subjective limitations. (Tr. 17-19). This Court finds no error in the analysis.

### Step Five Evaluation

Claimant also challenges the adequacy of the hypothetical questioning of the vocational expert by the ALJ. However, the challenge is based upon Claimant's contention that the RFC was flawed. This Court has found the RFC to be supported by substantial evidence. The hypothetical questioning of the vocational expert mirrored the ALJ's RFC and, thus, no error is found at step five.

### Conclusion

The decision of the Commissioner is supported by substantial evidence and the correct legal standards were applied. Therefore, this Court finds, in accordance with the fourth sentence of 42

U.S.C. § 405(g), the ruling of the Commissioner of Social Security Administration should be and is **AFFIRMED**.

IT IS SO ORDERED this 31st day of March, 2020.

_____
KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE

13